INDEPENDENCE TOWN COMPANY v. JAMES DELONG,
*Mayor, &c.*

1. MANDAMUS, *Will not lie to Compel the Execution of Trust.* A mandamus is not the proper remedy to compel a mayor of a city to convey all the land pre-empted as a town site to a town company. If the company had any right to a deed, a court of equity is the appropriate tribunal to enforce the right.

2. TOWN SITES; *Occupants.* [The decision made in case of *Winfield Town Company v. Maris,* (ante, 128,) relating to ·occupants of town sites, and rules and proccedings for enforcing rights, cited and followed.]

*Original Proceedings in Mandamus.*

THE *Independence Town Company* as plaintiff filed in this court a petition against *James DeLong, as Mayor of the City of Independence,* defendant, for a writ of mandamus to compel the defendant to convey to the plaintiff or its assigns the lots in the town site of the city of Independence. The petition alleged that the plaintiff, being a duly chartered corporation under the laws of the state of Kansas for the purposes of purchasing, locating and laying out a town site, and the sale and conveyance of the same in lots, blocks or otherwise, in the month of July 1869, selected certain lands, (describing them,) the same being at that time public lands, to which the Indian title had not been extinguished; that said plaintiffs caused said lands to be surveyed into lots or blocks, streets and alleys, and caused a plat thereof to be filed for record in the office of the register of deeds of Montgomery county, that being the county in which the same are situated; that said lands remained public lands until June 7th 1872, subject to the laws of the United States relative to town sites; that the plaintiffs have expended large sums of money in platting said lands, and in building roads to the same, bridging streams, erecting buildings thereon, in inducing persons to settle upon and occupy lots, and that to induce persons so to do they have contracted to convey titles to such persons as would build upon and improve lots upon said town site as soon as the United States government should grant the same, together with other privileges; that many persons availed themselves of such inducements, so held out by the plaintiffs, and have settled upon and occupied lots in said town site, under such contracts so as aforesaid made, have largely improved the same, and that through such and kindred reasons, the population has been very largely increased, and a city built up of about twenty-five hundred inhabitants; that such result has been mainly accomplished by the active and persevering effort and expenditure of the said town company; that in 1871 Independence was incorporated as a city of the third class, when its mayor, E.

11—11 KAS.

E. Wilson, filed with the register of the proper land office of the United States, his declaratory statement asking as such mayor to purchase the lands in trust for the occupants; that his right was contested by adverse claimants before the officers of the department, which contest was sustained and carried on by the plaintiffs herein, they furnishing to the said mayor money to employ counsel, and to pay other expenses incident to said contest, and expending therein about $2,000; that during the pendency of the said contest, said town of Independence became a city of the second class, and defendant *DeLong* became mayor thereof, which office he still holds; that after defendant so became mayor the contest so carried on by the plaintiff was decided in plaintiff's favor, and the defendant availing himself officially of said decision, secured by the money and effort of the plaintiff, received a patent for the lands in controversy, and holds the same in trust under the act of congress approved March 2, 1867; that the plaintiff tendered to said defendant the money necessary to pay to the government for said lands, but that said defendant refused to receive it; that the plaintiff has demanded of defendant that he execute the trust by conveying to plaintiff and its assigns the said premises, with which demand the defendant refuses compliance. An alternative writ was issued and served. *DeLong* answered, showing cause. He admitted the entry of the land in trust, as alleged, but denied that plaintiff was a beneficiary, and averred that the inhabitants of said city, occupants of said lots, were the beneficiaries of the trust. In the answer *DeLong* says he "is now ready and proposes to execute and deliver to the occupants of said town site deeds for their respective lots so by them occupied, according to the rights of the respective parties, under the acts of congress aforesaid," and "that he is unwilling to convey said town site to the said Independence Town Company, or any part thereof." The action was heard upon the issue so joined.

*Thacher & Stephens*, for plaintiff:

1. The mayor admits that the money was offered him by plaintiff to pay the costs of survey, but he takes issue upon

plaintiff's right to a conveyance. The question then is fairly made as to who are the beneficiaries entitled to conveyances from this defendant. The defendant holds the title as trustee to lands acquired by virtue of the proceedings prosecuted by the plaintiff, and with plaintiff's money and labor.

We hold that plaintiff and its assigns are entitled to said conveyance. That one conveyance to the plaintiff inures to the benefit of all of its assigns. That plaintiff having settled upon and laid out the town site pursuant to the laws of the United States, is under those laws and the statutes of this state, the owner of the same and entitled to a conveyance thereof. The laws of the state authorize and encourage the formation of corporations for the purposes with which this plaintiff, on the faith of such laws, organized, and its officers devoted themselves and their capital to the building up of a flourishing city, adding largely to the aggregate wealth of the state. The defendant holds the title in trust. The act of congress has turned over to the state the authority to provide for the execution of the trust as to the *disposal* of the lots, etc. By § 1, ch. 109, Gen. Stat. of 1868, page 1073, it is made the duty of the mayor of any city, whenever called upon by the occupants of any town, and the money for the entrance of such town site furnished, to enter such town site; and § 2 provides that "when a town site is entered, deed shall be made by the mayor." Sec. 12 provides that "All persons who select and lay out a town site, and their assigns, shall be deemed occupants of said town site and the lots embraced therein, within the meaning of the above recited act of congress, and deeds shall be made accordingly." The word *person* extends to bodies politic and corporate.

The plaintiff then in its corporate capacity of "The Independence Town Company," having laid out the town site of this city of Independence, is, under and by virtue of this statute, and the laws of congress, entitled to a conveyance thereof from the defendant. There being no controversy as to who laid out the town site, and the defendant having no discretion to determine contested claims of ownership, and

showing by his answer no reason why he should not convey, this court will direct him to execute the trust by conveying, as prayed for by the plaintiffs. *Feizel v. Trustees*, 9 Kas., 592.

2. But independent of the statute of the state, and without the provision of §12 of said statute relative to town sites, plaintiff contends that it is still entitled of right to the conveyance, and that within the meaning of the act of congress, and of necessity, plaintiff is entitled to the conveyance from the defendant, and that a conveyance made to any other person would be in fraud of plaintiff's rights, and pass no title to the grantee. The law of congress passed March 2, 1867, provides "that whenever any portion of the public lands of the United States have been or shall be settled upon and occupied as a town site it shall be lawful in case such town shall be incorporated, for the corporate authorities to enter at the proper land office the land so settled and occupied in trust," etc. What is this settlement and occupation? It clearly means something distinctive from that settlement required from agricultural pre-emptors, because the town is to be surveyed and divided into blocks and lots, with streets and alleys. They are by the law allowed to pre-empt not exceeding a given number of acres, which are settled and occupied as a town site. Can this mean more than the simply platting and staking out, with the fixing of the residence of the parties doing or causing to be done these acts, on some part of it? If it is held to mean more, to mean an actual living individual occupation, then the pre-emption can be no larger than the lots so occupied, and there can be no vacant land. But the act contemplates more, and contemplating more must intend a different occupancy, and that occupancy it is submitted must of necessity be the very occupancy shown in this case to have been had by these plaintiffs—a general supervision and occupancy for town-site purposes. Without this no patent could issue, and under such occupancy the title has been acquired, and is now held in trust by this defendant. This, it has been demonstrated is sufficient occupancy under the laws of the United States to acquire the title. (*Leech v.*

*Rauch,* 3 Minn., 448.)   The town company then were the occupiers of the town site under the laws of congress for the purposes of acquiring the title.   Can a squatter, after the title is acquired and vested in a trustee to convey to the occupiers, by merely squatting upon a lot, acquire against the *cestuis que trust* any right?   Can he obtain an interest in the fund except by purchase?   We believe both reason and authority answer these questions in the negative.

. It is the mayor's duty to execute the trust.   This is done under direction of the statute.   That statute is, that the lands are entered at the minimum price, to-wit, "The land *so settled and occupied* in trust for the several use and benefit of the *occupants thereof* according to their respective interests." What occupants?   Obviously the occupants who have so settled upon and caused said lands to be entered.   And it is to be noted that the same are to be conveyed according to their respective *interests,* clearly contemplating interests in different ratio, and not according to the amounts covered by their buildings respectively.   The act nowhere provides nor contemplates the holding of said tract or any part of it, by the trustee as vacant land, paying no assessments and yielding no revenue, but does contemplate an entire disposition of the same and a disposition of the proceeds of sales — where, under the state regulations, sales are made.   This very language of itself clearly demonstrates that where the whole tract is claimed and located upon, the trustee is to convey to the parties interested; but where in cases in which the claim, by reason of a change of the town site to meet legal subdivisions, embraces land not claimed by the original occupiers, then such lands may be platted and sold, and the avails of the sales distributed under the rules and regulations adopted by legislative authority.  See *Leech v. Rauch,* supra; *Davis v. Murphy,* 3 Minn., 119; *Castner v. Gunther,* 6 Minn., 119.

*J. D. McCue,* also for plaintiff:

1. It is contended by defendant that § 12 of ch. 109, Gen. Stat. 1868, is void, as contrary to the letter and spirit of the

act of congress; that congress did not intend to confer such authority upon the legislature; that inasmuch as said section prescribes a different rule from that intended by congress, the court is asked to hold it void. Said section 12 is valid, and as a law is binding upon the trustee. It is within the scope of the power conferred upon the legislature by the act of congress providing that the execution of the trust as to the disposal of the lots and proceeds of the sales be conducted under the rules prescribed by the legislature. The act of congress under which everything is to be done is vague and indefinite in its terms as to who shall be deemed an occupant, and the requisites necessary to be performed in order to become an occupant under it; nor does the act in any manner point out how the trust shall be executed. The act of the legislature is clear, definite, and certain, and provides a rule under which the rights of parties may be determined. From the very nature of the law, and its objects, it is apparent that it was the design of congress to commit to the state authorities the full control of such trust. It is the history of all towns upon the public lands, that at the time the site is entered and the trust created, many of the lots are not settled upon and are unoccupied, and it is beyond the bounds of probability that all the lots would be settled upon and occupied. The entry of the lands is made for the use and benefit of the occupants thereof, according to their respective interests. The act of congress furnishes us no rule how that interest is to be determined, and unless the legislature can, under the power contained in said act, prescribe the rule, then we have none. If it is within the power of the legislature to prescribe the rule, then I submit that it is competent for it to say that persons performing certain acts, and their assigns, shall be deemed *the* occupants of such site. The legislature of the state is the most competent to determine the best manner of disposing of the lots in any such town site. See the case of *Ricks v. Reed*, 19 Cal., 551, a case arising under the act of congress, May 23, 1844, (5 U. S. Stat. at Large, 657.) The legislature of California had passed an act prescribing

rules and regulations for executing the trust, and in said case
of *Ricks v. Reed* it was insisted that the act of California was
unconstitutional and void, that it was in conflict with the act
of congress, that it changed and modified the grant contained
in said act, and provided for, and made, different persons
beneficiaries of said act, than was contemplated and intended
by the act of congress. In answer to the objections the court
say: "The objection to the constitutionality of the legisla-
tion of the state, prescribing the evidence necessary to
establish the title or right of the claimant to the lot, is not
well taken." And the reasoning of the court in that case,
(opinion, p. 574,) sustains the section under consideration.
The legislature has not attempted to create a new trust,
trustee, or *cestui que trust*. It simply declares that the trust
shall be so executed, that the right of persons entering upon
the public lands for the purpose mentioned, shall be protected,
and that they shall be entitled to the benefits growing out of
their venture. And while the legislation is sustained, as
within the scope of the power conferred, there are other rea-
sons and decisions which make the act of the legislature in
perfect harmony with the act of congress. In *Leech v. Rauch,*
3 Minn., 448, a case involving many of the questions raised
in this case, the supreme court of Minnesota say: "The
object and idea of settling and building a town is not for the
purpose of agriculture, but for trade; and the requisites of
the act as to settlement and occupancy, are complied with,
when these are such as to attain the object in view, namely,
the use of the land as a town site, for the purpose of trade,
commerce and manufacture. It is obvious that such settle-
ment need not necessarily be in person, or require any
cultivation of the soil."

2. That plaintiff has a remedy in equity is true, but that
it has any complete and adequate remedy at law, except by
mandamus, I deny. That there is a remedy in equity, does
not oust the proceedings by mandamus. (*People v. The Mayor
of New York*, 10 Wend., 293.) That mandamus lies to com-
pel the execution of a trust, and the courts will prevent any

diversion of the trust, see *Feizel v. Trustees*, 9 Kas., 592. The trust here is a peculiar one, different from those enacted by deed, and over which courts of chancery exercise control. The defendant becomes trustee by virtue of his office as mayor, so that the duties result from the two-fold function of mayor and trustee. The courts of law have the power to compel the execution of the trust, and when it can, it should be done.

*Wilson Shannon*, and *John Hutchings*, for defendant:

1. We deny that the plaintiff has any right to a conveyance of the land pre-empted by the mayor, or any part thereof. The claim of the plaintiff is based on the 12th section of the Town-Site law of Kansas of 1868, (page 1075.) If a construction is given to the said 12th section such as the plaintiff claims, it would make it void as in conflict with the letter and spirit of the act of congress of the 2d of March, 1867. This act of congress expressly provides that when a town is incorporated, as in this case, that the incorporated authorities may enter at the land-office, and at the minimum price, the land so settled and occupied, in trust for the several use and benefit of the occupants thereof according to their respective interests. The mayor, as the chief officer of the town, is authorized to pre-empt the land, and the act of congress makes him a trustee, and declares for whose use he shall hold the land by him pre-empted. Congress has in clear and distinct terms, declared the use for which the mayor pre-empts the land. The land must be settled on and occupied, and the mayor holds it in trust for the occupants. Unless a person has settled on the land, and is an occupant, he can have no interest in the trust property. This is the express provision of the act of congress of 1867, and the same principle runs through all the Town-Site laws authorizing the pre-emption of town sites, from the act of 1844, down to the act of 1867.

The state has no authority to change the trust or to declare a new or different use from the one declared by the act of congress. The act of congress provides that the execution

of the trust, as to the disposal of the lots in such town, and the proceeds of the sales thereof, is to be conducted under such rules and regulations as may be prescribed by the legislative authority of the state, etc. But this does not authorize the legislature to interfere with the trust, or to change or divert the use from those who have settled on the town site and are the occupants thereof. The object of congress was undoubtedly to secure to each occupant of the town site the lot or land occupied and settled on by him. 1 Lester's Land Laws, page 432, No. 493; p. 435, No. 494; pp. 436, 437, 438.

If the court should construe the 12th section of the act of 1868 as giving to the Independence Town Company, a company incorporated under the laws of the state of Kansas to locate and lay out towns, etc., the right to have the land preempted by the mayor conveyed to it, what becomes of the beneficiaries, those who have settled on the land, and are the actual occupants, and, in fact made the town? Those who compose the corporation of the Independence Town Company may or may not be occupants of the town site. The peremptory mandamus which is asked for in this case, would require the defendant, the mayor, to convey the land in question to the corporation known as the Independence Town Company. Should the mayor be required to make this conveyance, he will then have parted with the power to execute the trust devolved on him by the act of congress. The town company, the plaintiff, is composed of a few individuals, and there is no allegation in the writ that they are or ever were occupants in fact of the town site. But suppose the six or ten individuals composing this incorporated company were all actual occupants now of the town site, are they the only persons entitled to deeds for this land? What would become of the 2,500 persons that now occupy the town? Have they no rights? Are not they occupants within the express provisions of the act of congress of 1867? Are the rights of all these people to be disregarded, and are they to be forced to buy or purchase from the town company the property they occupy and have improved under the faith held out to them by the

act of congress? Are they either to lose their property and their improvements, or pay this incorporated town company such prices as may be extorted from them by a band of incorporated lot speculators? If such is to be the construction given to said 12th section, then we have no hesitation in saying that that section is in direct conflict with the act of congress of 1867, and therefore void.

But a careful examination of said 12th section will show that it should receive no such construction. That section provides that all persons who select and lay out a town site, and their assigns, shall be deemed occupants of said town site, and the lots embraced therein, within the meaning of the above act of congress, and deeds shall be made accordingly. What is meant by the words "the above act of congress"? The presumption is that these words refer to the act of congress of the 2d of March, 1867. Now this section, by any fair construction, does not authorize deeds to be made by the mayor to any incorporated town company, and that is what is sought to be secured in this case. The words "all persons who select and lay out a town site" would seem to exclude a corporation from receiving a deed, and that it was the actual persons who selected the town site and laid it out that should be deemed occupants — not the ideal being, the corporation representing many persons, and some, at least, who had never seen the town site. If this is correct, then the persons entitled to deeds are the actual persons who selected and laid out the town site, and not the corporation.

2. The case now before the court is not a proper one for mandamus. It is an attempt to obtain that relief by mandamus which properly belongs to a court of equity to administer where the rights and equities of all parties can be considered by the court and protected. This cannot be done in this case. It is evident that the corporate authorities of the town of Independence have rights that ought to be protected, even if the Independence Town Company are entitled to a deed for the land pre-empted. The municipal authorities have expended large sums of money in pre-empting and securing

the town site, as will appear from the answer of the defendant. In a mandamus case, the court can take no notice of claims of this kind. In a court of equity they could be recognized, and the rights of the municipal authorities secured and ample justice administered to all parties. A court of equity is therefore the proper and appropriate tribunal to hear and determine all such cases. We have not been able to find any case in the books where a court has undertaken to compel the execution of a trust by mandamus, or to enforce the specific performance of a contract by such means. It is the peculiar province of courts of equity to grant relief in all such cases.

The opinion of the court was delivered by

KINGMAN, C. J.: For the reasons given in the preceding case of *Winfield Town Company v. Enoch Maris, et al.*, the peremptory writ in this case must be refused. Another reason quite as conclusive may be given. If the plaintiff were entitled to the relief sought, it would find ample remedy in a court of equity, where the trust, if it existed, could be properly enforced, and the equities of all parties be considered and protected, which cannot be done in this proceeding. A court of equity is the appropriate tribunal to determine such a case, and its power to grant suitable relief ample and complete. Peremptory writ refused.

All the Justices concurring.